# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JAMES HURSTER, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:21-CV-00318 JAR ) |
| SPECIALIZED LOAN SERVICING, LLC, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff James Hurster brings this putative class action against Defendant Specialized Loan Servicing, LLC ("SLS") for violations of the Telephone Consumer Protection Act, 15 U.S.C. 227 ("TCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"). Plaintiff alleges SLS made numerous unsolicited, pre-recorded debt collection calls to his cellular telephone, all of which failed to disclose that the communication was from a debt collector in an attempt to collect a debt. Plaintiff now moves to dismiss his TCPA claim without prejudice. (Doc. No. 57). Plaintiff's stated reason for dismissal is that recent discovery indicates he expressly consented to be contacted on his cell phone through SLS's website. Because this is fatal to Plaintiff's TCPA claim, the Court will grant Plaintiff's motion, but dismiss the claim with prejudice. This matter is now before the Court on SLS's Motion for Summary Judgment (Doc. No. 35); Plaintiff's Motion for Class Certification (Doc. No. 43); and Plaintiff's Motion for Summary Judgment (Doc. No. 61). The motions are fully briefed and ready for disposition.[1]

---

[1] With leave of Court, Plaintiff filed an amended response to SLS's motion for summary judgment and statement of material facts on June 8, 2022 (Doc. Nos. 58, 59) and SLS filed a reply (Doc. No. 60). In light of his amended responses, Plaintiff's motion to consider his initial response to SLS's statement of statement of undisputed material facts (Doc. No. 46) as filed contemporaneously with his initial

**Facts**

U.S. Bank N.A. was the original lender and servicer of Plaintiff's home mortgage loan. In 2019, U.S. Bank transferred Plaintiff's mortgage and deed of trust to Selene Finance, LP. Plaintiff subsequently defaulted on his mortgage debt. Effective August 1, 2020, Selene Finance, LP transferred Plaintiff's defaulted mortgage debt to SLS while Plaintiff was in Chapter 13 bankruptcy.

Beginning in August 2020, Plaintiff received the following voicemail message from SLS:

> This message is from Specialized Loan Servicing. During this time of the recently announced national emergency relating to COVID-19, we are contacting you to remind you of alternative methods to receive information about your account, or to make payments. You may make payments via our website at www.sls.net or calling our Payment IVR service at (800) 981-9963. You can receive account information via our website at www.sls.net or through our automated phone system at (800) 315-4757. Thank you.

It is undisputed that the voicemail message does not mention the character, amount, or status of Plaintiff's debt. (See Doc. No. 58 at ¶ 25). SLS's records document ten (10) attempts to contact Plaintiff between August 11, 2020, and February 11, 2021.

**Legal standard**

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether

---

memorandum in opposition to SLS's motion for summary judgment (Doc. No. 47) will be denied as moot.

summary judgment is appropriate in a particular case, the Court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988).

Where parties file cross-motions for summary judgment, the legal standard does not change. Each motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. Jaudes v. Progressive Preferred Ins. Co., 11 F. Supp. 3d 943, 947 (E.D. Mo. 2014).

**Discussion**

The FDCPA is designed "to eliminate abusive debt collection practices by debt collectors" and "to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692 (a); Richmond v. Higgins, 435 F.3d 825, 828 (8th Cir. 2006). The Act prohibits "false, deceptive, or misleading representations or means in connection with the collection of any debt" and "unfair or unconscionable means to collect or attempt to collect any debt." Id. §§ 1692e, 1692f; Heinz v. Carrington Mortg. Servs., LLC, 3 F.4th 1107, 1112 (8th Cir. 2021).

To establish a violation of the FDCPA, Plaintiff must show that: (i) he is a consumer; (ii) SLS is a debt collector; and (iii) SLS violated, by act or omission, a provision of the FDCPA in an attempt to collect a debt. See Klein v. Stellar Recovery, Inc., No. 4:16CV1480 (JMB), 2017 WL 4551526, at *2 (E.D. Mo. Oct. 12, 2017) (citation omitted). A debt collector who violates the FDCPA is liable for any actual damages sustained by the plaintiff in addition to statutory damages of up to $1,000 and attorney's fees. 15 U.S.C. § 1692k(a). Actual damages include

3

damages for mental anguish, emotional distress, and humiliation. Jenkins v. E. Asset Mgmt., LLC, 4:08 CV 1032 CAS, 2009 WL 2488029, at *3 (E.D. Mo. Aug. 12, 2009).

FDCPA claims are viewed from the perspective of an "unsophisticated consumer," which protects consumers of below average sophistication or intelligence. Pace v. Portfolio Recovery Associates, LLC, 872 F. Supp. 2d 861, 864 (W.D. Mo. 2012) (citing VanHorn v. Genpact Services, LLC, No. 09-1047-CV-S-GAF, 2011 WL 4565477, at *2 (W.D. Mo. Feb. 14, 2011)). However, there is an "objective element of reasonableness" that protects debt collectors from liability for peculiar interpretations of collections notices "by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1055 (8th Cir. 2002) (quoting Wilson v. Quadramed Corp., 225 F.3d 350, 354-55 (3d Cir. 2000)). See also Duffy v. Landberg, 215 F.3d 871, 874-75 (8th Cir. 2000).

Plaintiff's claim arises under 15 U.S.C. § 1692f, which prohibits the use of unfair or unconscionable means to collect or attempt to collect any debt. Plaintiff asserts that SLS violated this provision by failing to disclose in its pre-recorded voice messages to Plaintiff that it was a debt collector attempting to collect a debt, in violation of § 1692e(11), which requires that in any communication, the debt collector must disclose that the communication is from a debt collector. (Compl., Doc. No. 3 at ¶¶ 32, 33). SLS argues it is not liable under the FDCPA because informational communications like its voicemail messages, that do not demand payment or discuss the specifics of an underlying debt, are not communications "in connection with the collection" of a debt.

For a communication to be in connection with the collection of a debt, "an animating purpose of the communication must be to induce payment by the debtor." Heinz, 3 F.4th at 1112-13 (citing McIvor v. Credit Control Servs., Inc., 773 F.3d 909, 914 (8th Cir. 2014)). "In

4

determining whether a particular communication was made in connection with the collection of a debt, courts examine the relationship between the parties, the purpose and context of the communication as a whole, and whether there is an explicit demand for payment." Hennessey v. Medicredit, Inc., No. 4:18-CV-00217, 2018 WL 3546769, at *2 (E.D. Mo. July 24, 2018) (quoting Klein v. Stellar Recovery, Inc., No. 4:16 CV 1480, 2017 WL 4551526, at *3 (E.D. Mo. Oct. 12, 2017)). "It is not necessary for a communication to include an 'explicit demand for payment' to be considered 'in connection with the collection' of a debt," but "it is just as clear that 'the statute does not apply to *every* communication between a debt collector and a debtor.' " Id. "The language used in the communication is … a factor" to consider in testing whether the communication is designed to induce payment and "legitimate business inquiries and informational communications do not violate § 1692c(a)(2)." Id. (citations omitted).

While the animating purpose of debt collector's communications with a debtor is generally a question of fact, where a reasonable jury could not find that an animating purpose of the communications was to induce payment, summary judgment for the debt collector is appropriate. Heinz, 3 F.4th at 1112-13.

SLS argues that its voicemail message was intended to convey general information about alternative methods of contacting SLS instead of calling its Customer Service Center. It was directed to all of its customers during the COVID-19 pandemic and was not restricted to customers who were in default on their mortgage loans. It did not ask for, or demand payment from Plaintiff or discuss the specifics of his debt or any collection efforts. In support of its position, SLS submits the testimony of its corporate representative, Stephen Elms, who testified to the purpose of the voicemail message as follows:

> A:    The wording of this particular voicemail was decided by our management team as a response to circumstances relating to COVID-19, the onset of the pandemic.

5

> \* \* \*
>
> A: At the onset of the COVID-19 pandemic, call volume increased dramatically into our Customer Service Center. In addition, we were transitioning from a remote -- or I'm sorry -- an in-office workforce to a remote workforce, so our situation was we had customer holding times longer than our standards, so we wanted to proactively let people know, in terms of outreach -- outreach, to use alternative means of obtaining their information for their loans rather than contacting our Customer Service Center.
>
> Q: And who did SLS send these voicemails to?
>
> A: All of our customers.

(Deposition of Stephen Elms ("Elms Depo."), Doc. No. 64-2 at 12:24-13:16). When asked what the phrase "information about your account" meant when referenced in the voicemail, Mr. Elms testified:

> A: Customers wanting to obtain documentation. We receive a lot of calls in our Call Center around I need to obtain this document, the various documents that are -- that mortgage people have. I need to know what my balance is, I need to know when my last payment was applied, all of those questions we get in our Customer Service Center, we wanted to try to encourage folks to use self-service rather than wait on hold a long time.

(Elms Depo. at 15:4-15).

In response to SLS's motion (and as the basis for his own motion for summary judgment), Plaintiff argues that he understood the purpose of the voicemail was to induce him to pay his mortgage debt. Specifically, he asserts that when the voicemail referred to "your account," SLS was referring to *his* mortgage debt and telling him where to make payment in an attempt to collect a debt. (Affidavit of James Hurster, Doc. No. 47-2 at ¶¶ 5-6). It was Plaintiff's testimony that he assumed SLS was referencing his mortgage debt because they were calling him on the phone number they had on file associated with his particular debt. (Deposition of James Hurster, Doc. No. 45-1 at 40:1-10; 41:4-6; 56:7-9).


> \* \* \*
>
> A: At the onset of the COVID-19 pandemic, call volume increased dramatically into our Customer Service Center. In addition, we were transitioning from a remote -- or I'm sorry -- an in-office workforce to a remote workforce, so our situation was we had customer holding times longer than our standards, so we wanted to proactively let people know, in terms of outreach -- outreach, to use alternative means of obtaining their information for their loans rather than contacting our Customer Service Center.
>
> Q: And who did SLS send these voicemails to?
>
> A: All of our customers.

(Deposition of Stephen Elms ("Elms Depo."), Doc. No. 64-2 at 12:24-13:16). When asked what the phrase "information about your account" meant when referenced in the voicemail, Mr. Elms testified:

> A: Customers wanting to obtain documentation. We receive a lot of calls in our Call Center around I need to obtain this document, the various documents that are -- that mortgage people have. I need to know what my balance is, I need to know when my last payment was applied, all of those questions we get in our Customer Service Center, we wanted to try to encourage folks to use self-service rather than wait on hold a long time.

(Elms Depo. at 15:4-15).

In response to SLS's motion (and as the basis for his own motion for summary judgment), Plaintiff argues that he understood the purpose of the voicemail was to induce him to pay his mortgage debt. Specifically, he asserts that when the voicemail referred to "your account," SLS was referring to *his* mortgage debt and telling him where to make payment in an attempt to collect a debt. (Affidavit of James Hurster, Doc. No. 47-2 at ¶¶ 5-6). It was Plaintiff's testimony that he assumed SLS was referencing his mortgage debt because they were calling him on the phone number they had on file associated with his particular debt. (Deposition of James Hurster, Doc. No. 45-1 at 40:1-10; 41:4-6; 56:7-9).

Plaintiff further argues that SLS admitted it expected customers to make payments from the voicemail it sent:

> Q: What did SLS want the respondents of this voicemail to do?
>
> A: We wanted the customers to use all of the alternative self-service options that they could prior to making a phone call with us.
>
> Q: And those would include the Payment IVR service or payments through the website; correct?
>
> A: Yes.
>
> \*\*\*
>
> Q: Did SLS hope that some of the recipients of the voicemail would make payments on their account?
>
> A: Yes, as well as obtain any other information that they would have needed to call us for.

(Elms Depo. at 9:5-9; 10:2-12; 13:15-19). When asked what the purpose of the "Payment IVR service" referenced in the voicemail was, Mr. Elms responded, "Customers can self-serve and make their own payments." (Id. at 16:4-7).

Plaintiff cites several cases in support of his contention that SLS's voicemail message violates the FDCPA. See Jones v. Foster, No. 4:12-CV-136 CAS, at *3 (E.D. Mo. Feb. 12, 2013); Mark v. J.C. Christensen Associates, Inc., Civil No. 09-100 ADM/SRN, at *5 (D. Minn. Aug. 4, 2009); Reed v. Budzik & Dynia, LLC, No. 4:11-CV-865(CEJ), at *3-4 (E.D. Mo. July 2, 2012); Dodd v. Delta Outsource Grp., Inc., No. 4:15CV1744 JCH, at *5 (E.D. Mo. Aug. 25, 2016); May v. NCEP, LLC, No. 4:13CV1583 CDP, at *12 (E.D. Mo. May 16, 2014). However, as detailed in SLS's memorandum in opposition to Plaintiff's motion (Doc. No. 65 at 4-5), none of these cases support his position, or even discuss the content of the communications or their "animating purpose." Again, the FDCPA does not apply to *every* communication between a debt collector and a debtor. See Hennessey, 2018 WL 3546769, at *2.

Even viewing Plaintiff's claim though the eyes of an unsophisticated consumer, the Court does not find his interpretation of SLS's voicemail message reasonable. It seems clear to the Court that the purpose and context of the communication as a whole was to provide all SLS customers – not just those in default – with information about alternative methods of contacting SLS during the unprecedented COVID-19 pandemic. The fact that some of the information conveyed addressed methods for making payments generally does not alter the message's animating purpose, particularly when it did not mention the character, amount, or status of Plaintiff's debt or make an explicit demand for payment. Under a plain reading of the statute, a communication must meet two requirements: it must (1) convey information (2) regarding a debt. 15 U.S.C. § 1692a(2). Where, as here, the content of the message does not convey information about a debt, then the message does not constitute a communication under the FDCPA.

**Conclusion**

Based on the record before the Court, no reasonable jury could find that an animating purpose of SLS's voicemail message was to induce payment. Nothing in SLS's informational message is specific to Plaintiff's debt; in fact, there is no mention of his debt. No part of the message requests or demands payment from Plaintiff. It does not threaten consequences for nonpayment. Thus, SLS's voicemail message was not a "communication in connection with the collection of a debt" as required to establish liability under the FDCPA. For this reason, SLS's motion for summary judgment will be granted; Plaintiff's motion for summary judgment will be denied; and Plaintiff's motion for class certification will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Dismiss TCPA claim [57] is **GRANTED** and the claim is **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Consider Plaintiff's Response to Defendant's Statement of Undisputed Material Facts as Filed Contemporaneously with Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [47] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that SLS's Motion for Summary Judgment [35] is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [61] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Class Certification [43] is **DENIED as moot**.

A separate Judgment will accompany this Memorandum and Order.

Dated this 5th day of August, 2022.

*John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**